UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| FOOD LION, LLC, FIDEL BRETO, d/b/a FAMILY FOODS, ON BEHALF OF THEMSELVES AND THE CLASS OF ALL OTHERS SIMILARLY SITUATED , | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:07-CV-188 |
| DEAN FOODS COMPANY, DAIRY FARMERS OF AMERICA, INC., and NATIONAL DAIRY HOLDINGS, LP, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This putative class action case is before the Court after remand from the Sixth Circuit Court of Appeals. In a previous ruling, this Court determined that the alleged restraint on trade in this case should be evaluated for reasonableness by applying the rule of reason instead of the per se rule, a holding affirmed by the Sixth Circuit. The case was remanded, however, for, among other things, the Court to decide which of "the two types of rule of reason analysis," the less-rigid "quick-look" approach or the "full rule of reason of analysis," to apply. *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 275 (6th Cir. 2014).[1] Defendants have moved the Court to apply the full rule of reason analysis, [Doc. 711], and plaintiffs have responded in opposition and "in support of application of quick-look form of rule of reason." [Doc. 714]. Neither party has requested oral argument on the motion and the Court agrees that oral argument is not necessary. Defendants' motion is ripe for disposition. For the reasons which follow, defendants' motion will be granted,

---

[1] Although styled this way in the Sixth Circuit, this case was not part of the Southeastern milk multidistrict litigation over antitrust violations alleged by dairy farmer plaintiffs. This case was, however, coordinated with that case for discovery purposes. The multidistrict litigation has now been concluded.

1

and the Court will apply a full rule of reason analysis in this case.

**I. Background**

In a prior order granting summary judgment, this Court held that the "rule of reason" approach would be applied in this case, rather than the per se rule advocated by the plaintiffs. On appeal of that order to the Sixth Circuit, the Court affirmed that the rule of reason applies to the case but remanded to this Court for a determination of whether a "full" rule of reason analysis would be applied or whether a "quick- look" analysis, "a third type of category arising from the blurring of the lines between per se and rule of reason cases," should be applied. *In re Se. Milk*, 739 F.3d at 274. As defendants point out, the resolution of this issue has "important practical implications" for how the case will be prepared and tried.[2]

**II. Analysis**

The "abbreviated" or "quick look rule of reason analysis" applies in an antitrust case when "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n. v. FTC*, 526 U.S. 756, 770 (1999). This "less-rigid approach" is one that "occupies territory between the per se and rule of reason tests," as do "the burdens and presumptions." *In re Se. Milk*, 739 F.3d at 274-275. With quick- look analysis, "[o]nce anticompetitive behavior is shown to a court's satisfaction, even without detailed market analysis, the burden shifts to the defendant who must justify the agreement at issue on procompetitive grounds by providing some 'competitive justification' for the restraint at issue." *Id*. at 275 (citing *Realcomp II Ltd. v. FTC*, 635 F.3d 815, 825 (6th Cir. 2011) ("The court has moved away from … reliance upon fixed

---

[2] Although this case is not currently stayed, all deadlines have been extended and the trial date continued while a petition for permission to appeal the Court's order denying plaintiffs' motion for class certification is pending in the Sixth Circuit. *See Food Lion, et al v. Dean Foods, et al*, No. 16-502, United States Court of Appeals for the Sixth Circuit.

categories and toward a continuum, within which the extent of the inquiry is tailored to the suspect conduct in each particular case.") (quoting *Polygram Holding, Inc. v FTC*, 416 F.3d 29, 33-34 (D.C. Cir. 2005)).

Applying the quick-look analysis, the Sixth Circuit held that "plaintiffs do not necessarily need to show geographic market evidence ***to defeat summary judgment***," and "when construing the facts and record evidence in plaintiffs' favor, the alleged unlawful conduct has obviously adverse, anticompetitive effects, and for ***purposes of summary judgment***, the district court should have at least considered the fact that a more detailed market analysis may not have been required under these circumstances." *In re Se. Milk*, 739 F.3d at 275 (emphasis added) (citing *Realcomp II*, 635 F.3d at 825). On remand, the Court was directed to "consider this possibility." *Id.* (citing *Realcomp II*, 635 F.3d at 827).[3] The Sixth Circuit further observed that, after remand, "the district court may yet determine that a full rule of reason analysis is still required." *Id.* at 276.[4] Defendants now move the Court "to order that the rule of reason's traditional burden-shifting analysis applies to Count I of plaintiffs' Amended Complaint," not for summary judgment purposes, but for the trial of the case. Plaintiffs oppose the motion. Defendants argue, in short, that the illegal conduct alleged by plaintiffs in this case does not present a clear-cut case of an obviously anticompetitive trade restraint. This is, as noted above, an important issue because the quick-look analysis not only relieves plaintiffs of the burden of showing anticompetitive effects in the relevant market as part of their *prima facie* case, it also shifts the burden to defendants "to

---

[3] This was important with respect to the summary judgment motion because this Court also excluded the testimony of plaintiffs' expert, Professor Luke Froeb, on the relevant market, a ruling reversed by the Sixth Circuit. Because this Court applied a full rule of reason analysis, it required plaintiffs to establish and define the relevant market, something they could not do without Professor Froeb's testimony. Given that the exclusion of Professor Froeb's expert testimony was error, summary judgment was inappropriate.

[4] This observation is somewhat puzzling given the Sixth Circuit's holding that Professor Froeb's testimony is admissible. At least for summary judgment purposes, it is no longer necessary for the Court to "consider the possibility" that a quick-look analysis is appropriate. Either way, regardless of whether quick-look or full rule of reason analysis is applied, plaintiffs have sufficient evidence of the relevant geographic market to defeat summary judgment.
3

show empirical evidence of procompetitive effects." *Realcomp II*, 635 F.3d at 825. Plaintiffs argue that the illegal conduct alleged does have obvious anticompetitive effects and that the Sixth Circuit has foreclosed the defendants' argument that quick-look is inapplicable because the contours of the geographic market is in dispute.

Quick-look analysis is reserved for conduct that is so clearly anticompetitive that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. Dental*, 526 U.S. at 770. As the Sixth Circuit noted, "the essence of plaintiffs' conspiracy claim is"

> NDH knowingly accepted 'second best' plants, operated those plants at losses and eventually shuttered some of those plants in an unlawful agreement with its competitor Dean/Suiza because, in return, its parent company, DFA, received a commitment from Dean/Suiza to allow it to supply raw milk to each Dean/Suiza bottling plant, including the pre-merger Dean plants previously supplied by independent dairy farmers.

*In re Se. Milk*, 739 F.3d at 269. As the Sixth Circuit further noted, plaintiffs have "characterized the conspiracy as a complex relationship among DFA, Dean Foods, and NDH." *Id.* at 272.[5] The Sixth Circuit also noted that "defendants have produced evidence that the agreement at issue may have had procompetitive aspects," including evidence that plant closures reduced costs and rationalized assets and that full supply agreements may be of economic advantage to buyers and sellers, and thus indirectly to the consuming public. *Id.* at 274.

Defendants argue that the alleged arrangement is not obviously anticompetitive on its face and that they have offered evidence of its procompetitive effect, citing *California Dental* for the

---

[5] On appeal, the plaintiffs attempted to present the conspiracy as "much simpler than previously alleged," but the Sixth Circuit refused to allow plaintiffs to disavow their previous position, observing that "plaintiffs should not be able to change their characterization of the conspiracy midstream in order to gain a more favorable outcome." *In re Se. Milk*, 739 F.3d at 272.

4

proposition that the Supreme Court has rejected use of quick-look when the challenged conduct "might plausibly be thought to have a net procompetitive effect, or possibly no effect at all on competition." *Cal. Dental*, 526 U.S. 771. They also argue that quick-look is appropriate only where the contours of the market are sufficiently defined to permit the Court to ascertain, without the aid of extensive market analysis, whether the alleged restriction impairs competition, relying largely on *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 961 (6th Cir. 2004) ("abbreviated or quick-look analysis may only be done where the contours of the market . . . are sufficiently well-known or defined to permit the court to ascertain without the aid of extensive market analysis whether the challenged practice impairs competition."). They likewise argue that quick-look analysis is inappropriate when the agreement is complex or unique, citing *California Dental*, 526 U.S. at 775 n.12 (rejecting quick-look approach where "the circumstances of the restriction are somewhat complex"); *FTC v. Actavis*, 133 S. Ct. 2223, 2237 (2013) ("complexities" precluded quick-look analysis where the competitive effects of the type of restraint at issue could vary based on particular facts and circumstances); *California v. Safeway, Inc.*, 651 F.3d 1118, 1137-39 (9th Cir. 2011) (finding quick-look analysis inappropriate where the "features of the arrangement" were "unique" and its competitive effect was "uncertain").

Plaintiffs' responses to defendants' claims are not unpredictable. First, they argue that defendants' claim that the alleged illegal conduct is not obvious in its anticompetitive effect ignores the Sixth Circuit's conclusion that the conspiracy "has obviously adverse, anticompetitive effects" and that "the agreement between the horizontal competitors for the express purpose of limiting competition between them could be viewed as a 'facially anticompetitive restraint.'" They further argue that the Sixth Circuit has expressly held that "[u]nder the quick-look standard, the plaintiffs have met their burden of raising a genuine issue of material fact as to whether Dean

5

Foods violated the antitrust laws without establishing the relevant geographic market." Plaintiffs further claim that defendants have offered nothing to allow a plausible conclusion that the conspiracy as a whole has a net procompetitive effect. Finally, plaintiffs argue that courts have applied quick-look analysis to agreements that are complex in nature.

### A. Is the Challenged Conduct Obviously Anticompetitive?

Defendants do not sufficiently develop their argument on this issue. They correctly state the applicable law, make the conclusory claim that the challenged conduct is not facially anticompetitive, and concentrate largely on the claimed procompetitive effects. They make little effort, however, to explain how the alleged conspiracy would have made the milk market "more, rather than less competitive." *See Broadcast Music, Inc. v. CBS*, 441 U.S. 1 (1979). Plaintiffs, on the other hand, discuss their proof extensively and the perceived anticompetitive effects of the challenged conduct, as they see them. The problem, of course, with plaintiffs' arguments that the Sixth Circuit has already expressly found obvious anticompetitive effects is that the Sixth Circuit's findings were made in the context of a summary judgment motion where all reasonable inferences are drawn in favor of plaintiffs (the non-moving party), a standard not applicable to this motion. And, defendants have come forward, as noted by the Sixth Circuit, with plausible evidence of the procompetitive effects of the challenged conduct. The Court cannot say that the "shutter[ing]" of some plants which have previously been operated at a loss or full supply agreements between a buyer and a seller are obviously or facially anticompetitive.[6]

### B. The Contours of the Relevant Market

The parties acknowledge that an "abbreviated or 'quick-look' analysis may only be done where the contours of a market . . . are sufficiently well-known or defined to permit the court to

---

[6] Plaintiffs accuse defendants of "compartmentalizing" the parts of the alleged conspiracy by focusing on plant closures and full supply agreements. But that is how they have stated the conspiracy and they will not be allowed to change position midstream in this Court, just as they were not allowed to change their position in the Sixth Circuit.

ascertain without the aid of extensive market analysis whether the challenged practicing pairs competition." *Worldwide Basketball*, 388 F.3d at 961.  Plaintiffs define the relevant market in this case as Federal Milk Marketing Orders 5 and 7, consisting of Alabama, Arkansas, Georgia, Mississippi, Louisiana, North Carolina, South Carolina and Tennessee, and portions of Florida, Kentucky, Indiana, Missouri, Virginia and West Virginia.  Despite plaintiffs' arguments to the contrary, nothing about the contours of the proposed market are sufficiently defined to permit the Court to ascertain whether the challenged conduct impairs competition.  Indeed, on its face, the proposed market makes little sense and appears to be arbitrary.  The parties' opposing experts disagree strenuously about the definition of the proposed market.

Plaintiffs' argument that the Sixth Circuit has already foreclosed this argument is likewise unconvincing.  It is true, as plaintiffs suggest, that the Sixth Circuit did hold that this Court ***may*** apply a quick-look analysis; however, nothing in the Sixth Circuit's opinion can be interpreted as "foreclose[ing] the argument that quick-look analysis is inapplicable."  Indeed, that would be quite illogical since the Sixth Circuit acknowledged that this Court ***may*** ultimately decide to apply a full rule of reason analysis.  While the defendants are correct that the case law does not mandate that quick-look can be applied only if the contours of the market are not in ***dispute***, that is not the precise argument defendants make here.  Regardless, this Court finds that the contours of the relevant market are not sufficiently defined in this case to allow the Court to determine, without appropriate market analysis, that the challenged conduct indeed impairs competition.

### C.  Complexity of the Agreement

Plaintiffs are correct that neither the complexity nor uniqueness of an agreement, as a matter of law, precludes application of a quick-look standard of analysis.  To the extent defendants suggest otherwise, they are incorrect.  It appears, however, that defendants simply

7

argue that the alleged agreement, i.e., the challenged conduct, in this case is complex in nature making a quick-look analysis inappropriate in this case. Neither party sufficiently develops its argument on this point. It is true, however, that some courts have in fact determined the complexity of the challenged agreement to be an important factor in determining whether or not to apply quick-look or full rule of reason analysis. As noted above, plaintiffs have repeatedly characterized the conspiracy in this case as a complex relationship among DFA, Dean Foods and NDH. The Sixth Circuit, of course, noted that plaintiffs attempted to simplify the alleged conspiracy when arguing before that Court for per se treatment. Despite the lack of analysis, however, this Court agrees that the alleged conspiracy is in fact complex, involving multiple parties and the highly contested allegation that NDH was indeed a false competitor controlled completely by DFA. For this reason as well, quick-look analysis is inappropriate in this case.

### III. Conclusion

For the reasons set forth herein, including that the challenged conduct is not obviously or facially anticompetitive, that the challenged conduct can plausibly be argued to have net procompetitive effects, that the contours of the relevant market are not clearly defined and are highly disputed, and that the alleged agreement in this case is of a complex nature, defendants' motion will be GRANTED and the Court will apply a full rule of reason analysis in this case.

So ordered.

ENTER:

> s/J. RONNIE GREER
> UNITED STATES DISTRICT JUDGE